Hillsborough, {
June 4, 1935. }

NORWIN S. BEAN *v.* WILLIAM E. QUIRIN.

SAME *v.* SAME.

SAME *v.* WILLIAM E. QUIRIN & a.

*McLane, Davis & Carleton (Mr. Carleton* orally), for the plaintiff.

*Warren, Wilson, McLaughlin & Bingham* and *Wyman, Starr, Booth, Wadleigh & Langdell (Mr. Wyman* and *Mr. Langdell* orally), for the defendants.

MARBLE, J. In 1907 William E. Quirin, hereinafter called the defendant, acquired an interest in the Barton Company, a corporation maintaining a large department store in Manchester. For many years he was the principal stockholder in this company. Mrs. Quirin, whom he married in 1896, made frequent loans to him, taking his demand notes in return. She was named by him as the beneficiary of his various life insurance policies. The trust fund in question comprised the sum of $38,564.82, placed in the hands of George H. Warren, trustee, in 1915 to await the outcome of certain contingencies provided for by the will of Margaret A. Harrington. The defendant

acquired by purchase the interests of certain of the Harrington devisees including that of Margaret Curtis (now living), who was entitled during her lifetime to the income of the fund. In 1915 the trustee loaned the principal of the fund to the defendant, who gave the trustee his note secured by a mortgage covering the defendant's real estate in Manchester. The trustee foreclosed this mortgage in 1929, and the proceeds of the foreclosure sale together with certain accrued income are now held by the trustee pending the result of the present litigation.

In 1922 the plaintiff with others agreed to loan the defendant $100,000 to enable him to purchase 1,000 shares of the first preferred stock of the Barton Company, conditioned upon his raising $40,000 independently to put into the business. The notes on which the present actions at law have been brought represent the plaintiff's share of this loan. As security for the loan the defendant pledged stock of the E. C. Nichols Dry Goods Company, 70 shares of which were borrowed from Mrs. Quirin, who endorsed the certificates.

In order to raise the requisite $40,000 the defendant pledged to the United States Trust Company certain collateral including his life insurance policies. These policies were assigned directly to the trust company and Mrs. Quirin joined in the assignment. In the process of liquidation the assigned policies were surrendered and the defendant was credited with their surrender value. Certain other policies, though not pledged, were surrendered with Mrs. Quirin's written consent and applied on the indebtedness. Following this liquidation the defendant made the transfer to Mrs. Quirin which the plaintiff now seeks to set aside. The following facts relating to the transfer are found by the trial court:

"For some years Mrs. Quirin and her son John had been urging Mr. Quirin to secure her for the latter's indebtedness to her. On September 2, 1924, Mr. Quirin executed a receipt to Mrs. Quirin for $25,000 in cash, 10 shares of the common stock of the Barton Company, and 24 shares of the preferred stock of the same company, 'in consideration of which [the receipt read] I hereby sell and transfer to said Grace H. Quirin all my right and interest in a certain trust fund held for me in the hands of George H. Warren . . . and in addition thereto I hereby sell and transfer to said Grace H. Quirin my equity in' my home. . . .

"Sometime afterwards Mr. Quirin verbally told Mr. Warren what he had done. Mr. Warren asked that the 'assignment' be brought in. Upon seeing the document Mr. Warren advised that further papers

should be executed in order to effectuate the wishes of Mr. Quirin. Meantime Mr. Warren suggested that Mr. Quirin make sure just what he owed his wife. Eventually, Mr. Quirin and his son figured the sum as $38,400 . . . .

"After many delays new papers were drawn by Mr. Warren and finally executed on July 17, 1925. They were dated, except for the acknowledgment, on September 2, 1924, in order to conform to the less formal instrument drawn by Mr. Quirin. These papers included a demand note from Mr. Quirin to Mrs. Quirin for $38,400, bearing interest at five per cent, a mortgage of Quirin's homestead to secure the note, subordinated to the trustee's first mortgage and duly recorded July 18, 1925, a pledge of the trust fund as collateral security for the note."

On April 30, 1928, the plaintiff brought suit on the note of October 24, 1922, attaching the defendant's real estate and summoning as trustee one Couture, who had bargained for a portion of the Quirin homestead. On May 16, 1928, the plaintiff agreed to release his attachment in consideration of the release of three mortgages on the defendant's real estate so far as they covered the portion bargained to Couture; namely, the mortgage to George H. Warren, trustee, that to Mrs. Quirin, and one to Mrs. Quirin's mother. It was further agreed by all the parties that the defendant should give a deed of the property to Couture and that the purchase price of $7,500, less the real estate agent's commission, should be paid to trustees to be held by them for the benefit of the parties later found to be entitled thereto. The plaintiff's rights under the attachment were to be considered waived if he failed within sixty days to notify the trustees of his desire to contest the validity of the mortgages. He gave them no such notice and the writ of April 30 was never entered in court. Mrs. Quirin assigned her interest in the purchase price to one Clough, to whom she had assigned her mortgage, to secure him for a loan of $10,000, and the sum of $7,050, to which she would otherwise have been entitled, was paid to Clough on account of her indebtedness to him.

The presiding justice found on sufficient evidence that the defendant was insolvent on September 2, 1924. He also found that the amount legally due Mrs. Quirin on that date was $8,592.74. From this sum was deducted the amount paid Clough, leaving a balance in Mrs. Quirin's favor of $1,542.74.

"Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to

creditors, without regard to his actual intent, if the conveyance is made or the obligation is incurred without a fair consideration." P. L., c. 361, s. 4. Fair consideration is given for property or obligation, "when such property or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property or obligation obtained." P. L., c. 361, s. 3, cl. II. "In equity, when the property is of greater value than the consideration, the conveyance may be impeached as being voluntary to a partial extent, and if there is no actual fraud on the part of the grantee, will be sustained to the extent of the consideration, but only to that extent." 27 C. J. 544, 545, and cases cited; 1 Moore, Fraudulent Conveyances, 331, 332. In the present case the court has found "that Mrs. Quirin received the conveyance in absolute good faith."

A part of the consideration for the note for $38,400 comprised cash loans from Mrs. Quirin to the defendant. Two of these loans were evidenced by notes in existence at the time of the trial. Two other notes given in return for loans had been lost, but were in existence on August 10, 1915, when according to the testimony, the defendant approved and agreed to pay an itemized statement of his indebtedness to Mrs. Quirin which had been prepared and submitted to him by his son. This statement, which was an exhibit in the case, contained an item reading, "Jan. 9, 1904, $500" which the court rejected because it was "not evidenced by any withdrawal from a savings bank" (as had been the case with the other lost notes) and further because on that date Mrs. Quirin had made a deposit of $500. No finding has been made, however, concerning the testimony that the defendant on August 10, 1915, promised to pay the itemized statement submitted to him. If this testimony is entitled to credence, the only reasonable inference to be drawn therefrom is that the defendant treated the statement as though it were a stated account (*Toland* v. *Sprague*, 12 Pet. 300, 335), admitted its correctness, and agreed to pay the total amount shown to be due. He was then solvent, and there is no suggestion that he was not acting in good faith. Under such conditions his promise would be a binding one. *Rich* v. *Eldredge*, 42 N. H. 153, 158. The defendant excepted to the rejection of the item in question on appropriate grounds. The finding is therefore set aside.

With respect to the endorsement and pledge of the Nichols Company stock in 1922, the court found that it was not probable that the defendant and his wife contemplated that the transaction should

stand, as between themselves, other than as a loan of collateral. Mrs. Quirin's claim was rejected because she did not part with equitable title to the stock and because the stock became worthless through the bankruptcy of the Nichols Company six years later. The defendant himself testified that he "agreed to recompense" Mrs. Quirin for "turning over" the stock to him at the time of the transfer. Assuming that the transaction was in fact a loan of collateral, it is plain that the defendant was obligated to pay Mrs. Quirin at least the reasonable value of the use. The law would also imply an undertaking on the defendant's part either to return the stock or to pay for it. Furthermore, the evidence would justify a finding that in 1924 it had become apparent that the stock could not be returned and that the note then given by the defendant to his wife included some agreed price at which the defendant bought and became the owner of the stock. It follows that the ruling of the court in relation to the matter cannot be sustained.

The court erred in ruling that Mrs. Quirin was not entitled to interest on her husband's note because it was secured by a mortgage on the Quirin homestead. "Notwithstanding modern legislation respecting the relations of husband and wife, the husband is still bound by law to support his wife." *Wellington* v. *Drummer*, 69 N. H. 295, 296. There is here no evidence to justify the conclusion that there was an agreement that Mrs. Quirin should have "the use and occupation of the Quirin homestead, in lieu of interest," and such an inference could not legitimately be drawn from the mere fact that the trustee and the defendant exchanged receipts, the one for rent of the premises, the other for income from the fund.

"In connection with the pledge of the policies and their later surrender," the court finds, "it is not probable that Quirin made any promises to his wife to pay her in cash . . . . The giving of a vague promise to pay money at an uncertain time in a sum not probably representing the wife's loss, evidenced by no memorandum made at the time, seems less probable than that the husband made use of the insurance without making any promise such as he now avers."

It is true that a finding as to what the probabilities are with reference to an issue is equivalent to a definite finding on that issue. *Pulsifer* v. *Walker*, 85 N. H. 434, 436, and cases cited. But here, in view of the reference to a vague promise (apparently a characterization of the defendant's testimony), it does not clearly appear that the court noted the distinction between the defendant's promise to "recompense" Mrs. Quirin for the use of the policies as collateral and

his promise "to pay her what was realized on them" in case "the cash value was utilized to pay the loan." If his testimony is to be believed, the promise in the latter case was sufficiently definite. The defendant is entitled to a clarification of the findings on this issue. The findings should then be sustained or set aside according to the distinction indicated.

The defendant contends that the court failed to give proper legal effect to the agreement of May 16, 1928. By the terms of this agreement the attachment which the plaintiff had made on April 30, 1928, was to be considered waived if the plaintiff failed within 60 days to notify the trustees of his desire to contest by either legal or equitable proceedings the validity of any of the mortgages. Having failed to give this notice, the plaintiff could not of course object to the application of the purchase price to the partial payment of Mrs. Quirin's claim. He did not agree, however, either expressly or by implication, that he would not thereafter question her right to the balance claimed to be due or refrain from instituting proceedings to set aside the conveyance which secured it.

The situation is thus aptly stated by plaintiff's counsel: "The only new right which the attachment created was the acquisition of a lien on Mr. Quirin's property to satisfy any judgment he might obtain in the action then pending, which lien continued until the expiration of thirty days from the time of judgment . . . . His failure to give notice under the terms of the agreement had no different effect upon the respective rights of the parties to the agreement than as if Mr. Bean failed, as he eventually did, to enter the writ, except that the attachment was earlier dissolved."

No exceptions relating to the actions at law have been transferred. The extent to which the issues in the equity suit should be retried is a question for the superior court. The order here is

*New trial.*

WOODBURY and PAGE, JJ., did not sit: the others concurred.

---

ON REHEARING. After the foregoing opinion was filed the plaintiff moved for a rehearing.

*McLane, Davis & Carleton*, for the motion.

MARBLE, J. The plaintiff invokes in support of his motion the rule announced in *Spaulding* v. *Mayo*, 81 N. H. 85, 86, and approved in *LaMarre* v. *LaMarre*, 84 N. H. 553 and *Vidal* v. *Errol*, 86 N. H. 585, that "The general finding for the plaintiff includes a finding of all the special facts necessary to sustain it . . . unless it appears from the special findings that that is not the case."

The present case falls within the exception noted. Even if it can be said that the special findings are not actually inconsistent with the general findings, it appears that the trial court either has ignored the obvious legal and factual implications of the special facts found or has based his general findings on them. *Hatch* v. *Hillsgrove*, 83 N. H. 91, 98; Hening's Digest, *p.* 1250. See also *Sonabend* v. *Charron*, 86 N. H. 386, 388.

*Former result affirmed.*

WOODBURY and PAGE, JJ., did not sit: the others concurred.